WILLIAM MADDEN *vs.* BOARD OF ELECTION COMMISSIONERS
OF THE CITY OF BOSTON.

Suffolk.    January 13, 1925. — January 28, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Elections,* Death of candidate. *Mandamus. House of Representatives.*
*Words,* "Persons."

Valid votes for election to an office cannot be cast for one who is no longer
alive.

A certificate, purporting to be issued under G. L. c. 54, § 128, by the elec-
tion commissioners of the city of Boston to the Secretary of the Com-
monwealth, certifying the election to the House of Representatives of
one whom they knew to have died before election, is an utter nullity,
the word "persons" in the statute meaning living human beings.

From facts agreed upon at the hearing of a petition for a writ of man-
damus directing the election commissioners of Boston to certify to the
Secretary of the Commonwealth the election of the petitioner as a repre-
sentative from a certain district in the city, the following appeared:
The district was entitled to choose two representatives at the election,
and there were two names printed on the ballot.   One of the candidates
died early in the morning of the day before election.   Newspaper
reports and persons stationed at the polls so effectively informed the
voters of the district of the fact of such death that it was generally
known.   The petitioner caused stickers to be supplied to persons wish-
ing to vote for him.   The result of the election was that the living
candidate on the ballot received about fifty-three hundred votes,
twenty-nine hundred votes were cast for the name of the candidate
who had died, and eleven hundred for the petitioner.   The petitioner
caused the election commissioners to be informed of the death of the
candidate before election.   The commissioner certified as elected the
two names printed on the ballot.   *Held,* that

(1) The petitioner received the second largest number of votes cast
for any candidate capable of being voted for and was elected by a
plurality of the votes susceptible of being counted under the law;

(2) It was the duty of the election commissioners under G. L. c. 54,
§ 128, to certify the election of the petitioner;

(3) The duty of the election commissioners to certify was ministerial
and not political;

(4) Mandamus was the appropriate remedy;

(5) G. L. c. 54, § 141, was inapplicable because a complete election
was held;

(6) No opinion was expressed as to the rule of law which would be
applicable if a candidate on a ballot were ineligible or had died late on

election day and the voters did not appear to have exact knowledge as to the disqualifying facts.

Although the House of Representatives of the General Court had already assembled and organized before the petition above described was argued before this court, it was not too late for the issuance of a proper certificate to the petitioner.

*It was stated* that the above decision affected merely the right of the petitioner to the certificate and did not trench in any degree upon the constitutional prerogative vested exclusively in the House of Representatives by c. 1, § 3, art. 10, of the Constitution to be the "judge of the returns, elections, and qualifications of its own members."

PETITION, filed in the Supreme Judicial Court on November 20, 1924, for a writ of mandamus commanding the respondents forthwith to certify conformably to G. L. c. 54, § 128, the election of the petitioner to the office of Representative for the Fifteenth Suffolk District in the Great and General Court.

The facts were agreed upon. Material facts are described in the opinion. The case was reserved by *Crosby*, J., for determination by the full court.

*A. D. Hill & F. Adams*, for the petitioner.

No argument nor brief for the respondents.

RUGG, C.J. This is a petition for a writ of mandamus to compel the respondents to certify the election of the petitioner to the office of a representative in the General Court for the Fifteenth Suffolk District. The case is submitted on agreed facts. They show that the voters of the Fifteenth Suffolk District were entitled at the election on November 4, 1924, to elect two representatives to the General Court. The names of William A. Canty and Joseph M. Ward and no others were printed on the official ballot, each name being followed by the word "Democratic." William A. Canty died early in the morning of the day before election. That fact was generally known throughout the district and notices of his death were prominently printed in the newspapers of that day. The specimen annexed to the record shows that there was headline announcement covering six of the eight columns of the first page of the newspaper and that an obituary filled more than one fourth of a column of the first page running onto a later page. On election day stickers carrying

the name of the petitioner were distributed. He was a member of the democratic party and was generally known to be such by the voters and residents of said district. The supporters of the petitioner, knowing that the name of William A. Canty was still on the official ballot and for the purpose of making certain that no votes should be cast for him in ignorance of the fact that he was not living, stationed two persons near each of the eleven polling places in the district. These persons were instructed to inform each voter approaching the polling booth of the fact that William A. Canty had died. These persons would testify that each voter going to the polls was so informed. The result of the balloting was that five thousand three hundred and seventeen votes were cast for Joseph M. Ward, two thousand nine hundred and forty-two votes for William A. Canty, one thousand one hundred and sixty-five votes for the petitioner and a much smaller number of votes for several others. The petitioner, who contends that Joseph M. Ward and himself were elected representatives, caused the respondents to be notified of the fact that William A. Canty died on November 3, 1924, the day before election. The respondents, knowing of the fact of Mr. Canty's death, refused to certify that the petitioner was elected but did file a certificate with the Secretary of the Commonwealth to the effect that at the election on the fourth day of November, 1924, " William A. Canty 430 Centre St. Boston and Joseph M. Ward 38 School St. Boston were elected " as representatives to the General Court from the Fifteenth Suffolk District.

It is plain from these agreed facts that in general the voters of the district knew and those who went to the polls had in addition specific notice that William A. Canty had died on the day before election. He had ceased to exist before election day. He had vanished as a possible participant in human affairs.

One who has died before election cannot be a candidate for an office or elected to an office. Valid votes for election to an office cannot be cast for one who is not longer alive. It is equivalent to throwing away a vote knowingly to cast it for one who has passed from earth to the great beyond. It is

of no more effect than to deposit a blank ballot, or one marked with a fictitious or historic name. This is not a doubtful question. It requires no discussion of legal principles. No process of reasoning is necessary to convince the intelligence. It is axiomatic. It is not open to debate. It is obvious to everybody.

It is equally plain that the respondents were doing a vain thing and asserting an impossibility in certifying that William A. Canty was elected to the office of representative in the General Court. They were required to make a certificate to the Secretary of the Commonwealth of " election of the persons appearing to be elected." G. L. c. 54, § 128. The word " persons " means living human beings. *Sawyer* v. *Mackie*, 149 Mass. 269. The respondents ought to have stated in their certificate to the Secretary the fact as to the decease of Mr. Canty before the day of election as they knew it indisputably to be.

The question is whether the election for the second representative from the Fifteenth Suffolk District was a nullity or whether the petitioner was elected. It was said in the opinion in *People* v. *Clute*, 50 N. Y. 451, 461: "It is the theory and the general practice of our government that the candidate who has but a minority of the legal votes cast does not become a duly elected officer. But it is also the theory and practice of our government, that a minority of the whole body of qualified electors may elect to an office, when a majority of that body refuse or decline to vote for any one for that office. Those of them who are absent from the polls, in theory and practical result are assumed to assent to the action of those who go to the polls; and those who go to the polls, and who do not vote for any candidate for an office, are bound by the result of the action of those who do; and those who go to the polls and who vote for a person for an office, if for any valid reason their votes are as if no votes, they also are bound by the result of the action of those whose votes are valid and of effect. As if, in voting for an office to which one only can be elected, two are voted for, and their names appear together on the ballot, the ballot so far is lost. The votes are as if for a dead man or for no man. They

are thrown away; and those who cast them are to be held as intending to throw them away, and not to vote for any person capable of the office.   And then he who receives the highest number of earnest valid ballots, is the one chosen to the office. . . .   They who, knowing that a person is ineligible to office by reason of any disqualification, persistently give their ballots for him, do throw away their votes, and are to be held as meaning not to vote for any one for that office. . . . [At page 466.]   We think that the rule is this: the existence of the fact which disqualifies, and of the law which makes that fact operative to disqualify, must be brought home so closely and so clearly to the knowledge or notice of the elector, as that to give his vote therewith indicates an intent to waste it." This is a succinct and clear statement of the law.   Amplification will not elucidate it.   It is precisely applicable to the facts here disclosed.   It is agreed that the death of Mr. Canty on November 3, 1924, was on that day generally brought home to the knowledge of the voters of the Fifteenth Suffolk District.   That is a district in the city of Boston, where numerous daily papers are printed and widely circulated.   The attention of every voter who went to the polls on election day was directed specifically to the fact of the death of Mr. Canty.   Therefore there is no room for doubt that the votes nominally cast for Mr. Canty were deposited in the ballot box with the knowledge that he had died the day before the election day.   The motives of those who thus cast ballots are not revealed on this record.   We assume that they were unexceptional as humane sentiments. It may have been done as a tribute of respect to his memory or as some expression of sorrow for his decease.   Elections are not held for any such purpose.   Purity of motive cannot clothe with vitality an act which is in its very nature a nullity.   Elections are held at great public expense for the single purpose of selecting those who are to hold public office and of enabling voters to express their preference as to questions concerning government lawfully placed upon the ballot.   Those who attempt to use the machinery of election to any other end, whatever it may be, are acting contrary to the whole theory of elections.   They cannot complain if those

who resort to the polls and act in conformity to the theory and right practice of elections accomplish the aim of the election by choosing the officers required by law to be chosen.

No one would contend, if the votes cast for Mr. Canty had been blank ballots or had contained three names for representative properly marked, two only being capable of election, that the petitioner would not have been elected. The same result follows on the facts here disclosed. The petitioner received the second largest number of votes cast for any candidate capable of being voted for. He was elected by a plurality of the votes susceptible of being counted under the law. Art. 14 of the Amendments to the Constitution. Any other conclusion might in conceivable circumstances enable a cohesive and perverse minority to work much mischief with elections. This conclusion is supported directly by the well reasoned cases of *State* v. *Frear,* 144 Wis. 79, *Gulick* v. *New,* 14 Ind. 93, and by the principle of *People* v. *Clute,* 50 N. Y. 451, already cited and of *Gosling* v. *Veley,* 7 Q. B. 406, *Regina* v. *Coaks,* 3 El. & Bl. 249, *Drinkwater* v. *Deakin,* L. R. 9 C. P. 626, *Beresford-Hope* v. *Sandhurst,* 23 Q. B. D. 79, *State* v. *Bell,* 169 Ind. 61, and cases there reviewed. See 9 R. C. L. 1126, and cases there collected. It is contrary to the principle of *Sheridan* v. *St. Louis,* 183 Mo. 25, which relies in part on *State* v. *Walsh,* 7 Mo. App. 142.

There are numerous decisions, where a candidate has been ineligible, or has died late on election day, and the voters did not appear to have exact knowledge as to the disqualifying facts, in which the election has been declared void, and the candidate receiving the next largest number of votes has been denied election. We express no opinion upon such facts. The present decision is of course confined to the issues presented upon this record. In some of those decisions somewhat broad language has been used. But the facts of all those cases are so different from those in the case at bar that it is not necessary to review them. They are collected in a foot note.*

---

* *Chandler* v. *Wartman,* 6 N. J. L. J. 301. *Sublett* v. *Bedwell,* 47 Miss. 266. *Crawford* v. *Molitor,* 23 Mich. 341. *Gardner* v. *Burke,* 61 Neb. 534. *Haggard* v. *People,* 130 Ill. App. 211. *Fish* v. *Collens,* 21 La. Ann. 289. *McKeever* v. *Cameron,* 179 Wis. 405. *Commonwealth* v. *Cluley,* 56 Penn. St. 270. *Heald*

It is apparent that all the pertinent facts were seasonably known to the respondents. Since the votes cast for William A. Canty must be treated as nullities consciously deposited as such by the voters who put them in the ballot box, the petitioner, having received the next largest number of votes, was elected together with Mr. Ward. It follows that it was the duty of the respondents under G. L. c. 54, § 128, to certify the election of the petitioner as one of the representatives to the General Court from the Fifteenth Suffolk District. In view of the facts known by the respondents, it was their ministerial duty to issue the certificate. It is an appropriate function of the writ of mandamus to compel the performance of ministerial duties by public officers where no other remedy is provided. *Flanders* v. *Roberts*, 182 Mass. 524, 529, 530. *Brewster* v. *Sherman*, 195 Mass. 222, 225. *Attorney General* v. *Suffolk County Apportionment Commissioners*, 224 Mass. 598, 609, 610. *Mansfield* v. *Secretary of the Commonwealth*, 228 Mass. 262. *Andrews* v. *Board of Registrars of Voters of Easton*, 246 Mass. 572, 574. The duty of the respondents upon the facts found was ministerial or administrative as distinguished from political. Hence decisions like *Fitzgerald* v. *Mayor of Boston*, 220 Mass. 503, are inapposite.

If no election had resulted on the fourth of November, it would have been the duty of the respondents so to certify to the Secretary of the Commonwealth in order that a new election might have been held on the fourth Monday of November. G. L. c. 54, § 141. This provision of law is inapplicable because, as already shown, a complete election was held.

The House of Representatives of the General Court had already assembled and organized before this case was argued. It is not however too late for the issuance of a proper certificate to the petitioner. This is not an instance of the possi-

---

v. *Payson*, 110 Maine, 204. *Sanders* v. *Rice*, 41 R. I. 127. *Heney* v. *Jordan*, 179 Cal. 24. *Swepston* v. *Barton*, 39 Ark. 549. *Dryden* v. *Swinburne*, 20 West Va. 89. *State* v. *McGeary*, 69 Vt. 461. *Dobbs* v. *Buford*, 128 Ga. 483. *Batterton* v. *Fuller*, 6 S. Dak. 257. *Woll* v. *Jensen*, 36 N. Dak. 250. *Barnum* v. *Gilman*, 27 Minn. 466. See *Bowker, petitioner,* Mass. Election Cases, 1853–1885 (Russell's ed.), 282, and note page 285.

bility of two outstanding certificates held by different persons. In no right sense has a certificate issued to William A. Canty. The act of the respondents in going through the form of issuing such certificate was an utter nullity. Of course there was no delivery of it to him. It is provided by G. L. c. 3, § 4, that "A person having a certificate or other documentary evidence of his election as a representative who is not named on said lists may, after the house has been .called to order, present such certificate or evidence to the presiding officer, or to the speaker if one has been chosen, who shall communicate the same to the house for its action thereon; but such person shall not take a seat as a member until permitted by the house." The manifest purpose of this provision is to permit an elected member to present a certificate of election after the organization of the House, if for any reason he did not receive it earlier. Therefore the case at bar is not moot; it is real. The certificate has a genuine value now to the petitioner.

The decision of this case affects merely the right of the petitioner to the certificate. This adjudication does not trench in any degree upon the constitutional prerogative vested exclusively in the House of Representatives by c. 1, § 3, art. 10, of the Constitution to be the "judge of the returns, elections, and qualifications of its own members." There can be no invasion of that field. *Dinan* v. *Swig*, 223 Mass. 516. But the petitioner is entitled to the certificate of election on the facts here disclosed. The respondents in the exercise of the statutory duty imposed on them ought to certify to that election. It is the function of the court through the writ of mandamus to require the performance of that duty. We go no further than that.

*Peremptory writ of mandamus*
*to issue as prayed for.*